```
                    UNITED STATES BANKRUPTCY COURT
                      NORTHERN DISTRICT OF OHIO
                                    *
                                    *
    IN RE:                          *    CASE NUMBER 04-42726
                                    *
    MIDWAY MOTOR SALES, INC.,       *
                                    *
                                    *    HONORABLE KAY WOODS
                                    *
               Debtor.              *
                                    *
                                    *
    *****************************************************************
                    M E M O R A N D U M   O P I N I O N
    *****************************************************************
```

This cause is before the Court on a Motion to Employ Attorney for Trustee for Special Purpose (the "Motion to Employ"), pursuant to which Elaine B. Greaves, as Chapter 7 Trustee ("Trustee") seeks to employ Michael Gallo, Esq. ("Gallo") for two specified purposes. The stated purposes both relate to an adversary proceeding styled *General Motors Acceptance Corporation v. Midway Motor Sales, Inc., et al.*, Case No. 04-4147 (the "Adversary Proceeding").[1] Trustee seeks counsel to represent Trustee and the estate (i) "in matters seeking a determination of the amount, validity, classification and priority of the claim asserted against Midway Motors, Inc. ("Debtor") by General Motors Acceptance Corporation" ("GMAC"), and (ii) "in seeking collection of those assets and causes of action." In response, GMAC filed: (i) Objection of Secured Creditor General Motors Acceptance Corporation to Motion to Employ Attorney for Trustee for Special Purpose (the "Objection") and (ii) Supplemental

---

[1] The Trustee has asserted a counterclaim against GMAC and various cross-claims in the Adversary Proceeding.

Memorandum of Secured Creditor GMAC in Opposition to Trustee's Motion to Employ Attorney for Special Purpose (the "Supplemental Memorandum"). GMAC contends that Gallo has a conflict of interest because (i) he represents Michael Mercure and Carol Mercure (the "Mercures"), who are general unsecured creditors of Debtor's estate, and (ii) Gallo's firm, Nadler, Nadler & Burdman, represents Sky Bank, another secured creditor. GMAC further argues that Gallo should not receive a 1/3 contingency fee because GMAC – not Trustee – initiated the Adversary Proceeding. Gallo filed Response to Supplemental Memorandum of GMAC in Opposition to Trustee's Motion to Employ Attorney for Special Purpose (the "Response"), contending that he is being retained for a special purpose in which his interests are aligned with Trustee's interest and, therefore, he does not have a conflict of interest.

For the reasons set forth below, this Court grants the Motion to Employ.

## I. FACTS

The facts in this case are detailed and complicated. On June 3, 2004 (the "Petition Date"), Debtor commenced this case by filing a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. By order entered on September 24, 2004, this case was converted to a proceeding under Chapter 7 of the Bankruptcy Code. Prior to the Petition Date, the Mercures were the sole shareholders of Debtor, which operated a business that sold General Motors vehicles. On or about April 21, 2004, Debtor entered into an agreement

2

(the "Sale Agreement") with David Flynn and David Flynn, Inc. (collectively "Flynn") for the sale of Debtor's business assets, including the inventory and other assets, but not the real estate or the shares of stock. Flynn's new business operated at the same location as Debtor's prior business under the name Performance GMAC. Pursuant to the Sale Agreement, Flynn became obligated to make certain periodic payments to Debtor. However, Flynn has refused to pay Debtor money that is due and owing under the Sale Agreement because of issues relating to the roll-back of certain odometers (the "Odometer Roll-Back").

GMAC alleges that it is entitled to any monies owed by Flynn to Debtor because, as the primary secured creditor, it held a security interest in all of Debtor's assets that were sold to Flynn. GMAC asserts that, since it did not consent to the sale or the release of its security interest, such security interest transferred to the proceeds of the sale. GMAC alleges that the total amount it is owed by Debtor – and, thus, its secured claim – is approximately $1.6 Million. Of this amount, GMAC claims $1.5 Million are damages owed by Debtor relating to the Odometer Roll-Back and $90,000.00 represents payments due and owing under a floor plan financing agreement (the "Floor Plan Obligation"). GMAC also alleges that the Mercures owe it these same amounts based on the Mercures' guarantee of Debtor's indebtedness to GMAC.

3

The main issue in this case concerns the amount of GMAC's secured claim,[2] *i.e.*, whether GMAC's security agreement extends to the Odometer Roll-Back damages. It is undisputed that GMAC holds a secured claim of $90,000.00, which is the Floor Plan Obligation. There is also no question that Debtor has sufficient assets to satisfy the Floor Plan Obligation.

### A. The State Court Action

GMAC initiated the State Court Action against the Mercures to determine the validity of the Mercures' guarantee. The Mercures are represented by Albert A. Palombaro, Esq. in the State Court Action. The Cuyahoga Court of Common Pleas ("Common Pleas Court") found that Mercures were liable on the guarantee, but the Common Pleas Court did not determine if the guarantee covered the Odometer Roll-Back damages. As far as this Court knows, the Common Pleas Court has not yet adjudicated the extent of the guarantee or the amount that the Mercures are liable to GMAC.

### B. The Adversary Proceeding

On August 11, 2004, GMAC initiated the Adversary Proceeding to determine the validity, extent and priority of its claim against Debtor, Flynn and numerous other parties. Because the Adversary

---

[2] A related issue is to what extent the Mercures are liable on their guarantee and whether the Mercures are guarantors of the Odometer Roll-Back damages. The Mercures and GMAC entered into a guaranty to extend and/or continue to extend credit as part of a collateral floor plan financing agreement between Debtor and GMAC. A dispute over this guarantee is the basis of a lawsuit currently pending in the Court of Common Pleas for Cuyahoga County, Ohio styled *General Motors Acceptance Corporation v. Michael Joseph Mercure, III, et al.*, Case No. CV-04-542097 (the "State Court Action"). Because the Mercures are not debtors in this Court, that issue does not concern the estate.

4

Proceeding was filed prior to the conversion of the case to Chapter 7, there was no Chapter 7 trustee appointed at the time the Adversary Proceeding was commenced. After conversion, Trustee actively participated in the Adversary Proceeding by filing an Answer, as well as counterclaims and cross-claims.

On February 4, 2005, the Court allowed the Mercures to intervene in the Adversary Proceeding because it sought to calculate and determine the amount and validity of Debtor's obligation for which Mercures are guarantors. As a consequence, the Mercures have a substantial legal interest relating to the outcome of the Adversary Proceeding. The Mercures are represented by Gallo in the Adversary Proceeding and as creditors in Debtor's bankruptcy case.

### C. The Main Bankruptcy Case (Case No. 04-42726)

On November 16, 2004, Trustee filed an Application to Employ Melissa Macejko, Esq. and Andrew Suhar, Esq. from the firm Suhar and Macejko LLC to represent her generally in this proceeding. The representation encompassed the sale of real estate and the collection of certain accounts receivable. On December 1, 2004, the Court granted Trustee's application to employ Macejko and Suhar.

On December 15, 2004, Trustee moved to employ a real estate agent (the "Motion to Employ Real Estate Agent") to sell property located at 4290 State Route 7, New Waterford, Ohio 44445 (the "Real Property"), which had an estimated value of Seven Hundred Thousand Dollars ($700,000.00). The Mercures and Flynn objected to the Motion to Employ Real Estate Agent.

5

Subsequently, on March 9, 2005, Trustee moved to sell the Real Property to the Mercures pursuant to section 363 of the Bankruptcy Code (the "Motion to Sell"). Trustee represented that the only liens encumbering the Real Property were (i) unpaid real estate taxes in the amount of $3,500.00, and (ii) obligations due and owing to Sky Bank in the approximate amount of $356,856.87. GMAC objected to the sale of the Real Property on the grounds that: (i) GMAC holds a first priority lien on the proceeds from the sale of Debtor's business and, thus, GMAC contends that it is entitled to receive the entire amount from the sale of the business as well as any other amounts constituting proceeds of GMAC's collateral, (ii) Sky Bank's lien is less than the $365,856.87 asserted because that amount includes a general unsecured claim amount of $43,450.59, and (iii) the sale is below market value and the Real Property was never offered for public sale. Sky Bank objected to the Motion to Sell on the grounds that it was unwilling to allow the Mercures to assume the mortgages on the Real Property without an evaluation of their finances.

On March 20, 2006, Trustee filed Trustee's Notice of Proposed Abandonment ("Notice of Abandonment"), in which Trustee represented that the estate did not have the funds to continue to litigate the claims in the Adversary Proceeding and that GMAC was unwilling to provide a carve out for attorney fees in order for Trustee to continue the litigation. GMAC's refusal was based on its alleged security interest in all of Debtor's assets in an amount exceeding

6

the value of Debtor's estate. The Notice of Abandonment sought to abandon all accounts receivable, including but not limited to: Modern Builders Supply, Inc., all amounts due and owing under the Flynn Sale Agreement, all other claims including Chapter 5 claims against Flynn and GMAC, and all claims and counterclaims in the Adversary Proceeding. On the same date, Trustee withdrew the Motion to Sell. The Mercures objected to the Notice of Abandonment on the grounds that abandonment (i) would deprive the estate of valuable assets, and (ii) would benefit only GMAC, to the detriment of the rest of the estate. The Mercures argued that (i) abandonment would allow GMAC to pursue all Debtor's assets, even though there is a dispute as to the extent, validity and amount of GMAC's security interest, and (ii) if GMAC is wrong in its assertion regarding the amount of its security interest, the assets should not flow to GMAC, but should be distributed to all creditors of the estate.

On May 24, 2006, the Court conducted a hearing on the Notice of Abandonment. On May 31, 2006, the Court issued an order authorizing Trustee to abandon the property set forth in the motion. On June 8, 2006, the Mercures filed a Motion to Reconsider and to Vacate Order Authorizing the Abandonment of Property (the "Motion to Vacate") alleging that the order was entered based on a misrepresentation that a settlement had occurred between the Mercures and GMAC in the State Court Action. In opposing the Motion to Vacate, GMAC argued that the Common Pleas Court had previously issued an order on the amount of the Mercures' guarantee. On July 11, 2006 this Court held

7

a hearing on the Motion to Vacate, at which time Gallo represented that he would be willing to pursue Trustee's claims as special counsel on a contingency basis, since the estate did not have the money to otherwise pay counsel to pursue such claims. GMAC objected to Gallo's proposed representation on the basis that Gallo had a conflict of interest and thus could not represent Trustee. The hearing was adjourned to July 17, 2006. On July 11, 2006, Trustee filed the Motion to Employ, which is currently before this Court. At the July 17 hearing, the Court ordered the parties to submit supplemental briefs on the issue of Gallo's representation of Trustee.

## II. ANALYSIS

Employment of professional persons is governed by section 327 of the Bankruptcy Code, which states in pertinent part:

> (a) **Except as otherwise provided in this section,** the **trustee,** with the court's approval, **may employ one or more attorneys,** accountants, appraisers, auctioneers, or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.**
>
> \* \* \* \*
>
> (c) **In a case under chapter 7,** 12, or 11 of this title, **a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor,** unless there is objection by another creditor or the United States trustee, in which case the **court shall disapprove such employment if there is an actual conflict of interest.**

11 U.S.C. § 327(a) and (c) (Emphasis added.). The term "disinterested person" is defined as a person that "does not have

8

an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(E).

In the instant case, there is no question that Gallo is not a disinterested person, as defined by section 101(14)(E), because of his representation of the Mercures, who are general unsecured creditors. As a consequence, Trustee would be prohibited from employing Gallo as her general counsel to help her to carry out her duties as trustee.

The crux of GMAC's objection to Trustee's employment of Gallo is that he is not a disinterested person.[3] In this case, however, Trustee is not seeking to employ Gallo for all purposes, but only for the specified purposes set forth in the Motion to Employ. Thus, section 327(c) is the applicable section to review and analyze. Pursuant to section 327(c) of the Bankruptcy Code, Gallo's relationship to the Mercures, alone, does not disqualify him from representing Trustee as counsel for a special purpose.

> [T]he Sixth Circuit has not addressed this issue directly, other courts within the Sixth Circuit have found that "where a trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself."

*In re Peters Contracting, Inc.*, 301 B.R. 857, 860 (M.D. Tenn. 2003)

---

[3] In its Supplemental Memorandum, GMAC attempts to confuse the issue of disinterestedness by labeling sections with the phrase "adverse interest" or "conflict of interest." All of GMAC's arguments, however, rely on Gallo's representation of the Mercures, as general unsecured creditors, as the basis for denying the Motion to Employ.

9

(quoting *In re M.T.G., Inc.*, 298 B.R. 310, 318 (Bankr. E.D. Mich. 2003)(quoting *In re Dev. Corp. of Plymouth, Inc.*, 283 B.R. 464 (Bankr. E.D. Mich. 2002)(quoting *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993)). Thus, when the interest for which special counsel is retained and the interest of the estate are identical, there is no conflict of interest and the representation may be approved. *Id.* at 861. In order to prevail on its objection to Gallo's retention as special counsel, GMAC must prove that Gallo has either an interest adverse to the estate or has a conflict of interest with respect to the limited purpose for which he is retained. 11 U.S.C. §§ 327 (a) and (c); *Id. at 860*.

The Bankruptcy Code does not define the phrase "hold or represent an interest adverse to the estate." However, most Courts adopt the definition in *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1987), *aff'd in relevant parts and rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987). The Court in *In re Roberts* construed the phrase "hold an adverse interest" to mean:

> for two or more entities (1) to possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

Id. at 826-827; *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 461 (N.D. Ohio 2003); *In re Fretter, Inc.*, 219 B.R. 769, 777 (N.D. Ohio 1998).

10

An interest adverse to the estate pursuant to section 327(a) is the same as an actual conflict of interest pursuant to section 327(c). The Bankruptcy Court, in *In re Git-N-Go, Inc.*, 321 B.R. 54 (Bankr. N.D. Okla. 2004), used the word "conflict" and the phrase "conflicting interest" in defining the term "adverse interest."

> In determining whether a professional has or represents an "adverse interest," one court observed: "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). An actual conflict exists if there is "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), aff'd in pertinent part, 119 B.R. 35 (D.N.J. 1990). "As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case." *In re Amdura Corp.*, 121 B.R. 862, 865 (Bankr. D.Colo. 1990), quoting *Collier on Bankruptcy* ¶ 327.03 (1985).

*Id.* at 58-59.

Therefore, this Court needs only to consider the test in *In re Roberts* to determine if Gallo can represent the Trustee for the purposes specified in the Motion to Employ even though he also represents general unsecured creditors. In conducting this test, the Court should consider the interplay of the parties, pleadings and record set forth in the proceeding. *See In re Arochem Corp.*, 176 F.3d 610 (2d. Cir. 1999) ("Bankruptcy judges' findings on conflict of interest questions are entitled to deference because a bankruptcy

11

judge 'is on the front line, in the best position to gauge the ongoing interplay of factors and to make delicate judgment calls which such a decision entails.[4]'" *quoting In re Martin*, 817 F.2d. 175, 182 (1st Cir. 1987)).

Following the *In re Roberts* test, this Court does not find that Gallo has an adverse interest to the estate or an actual conflict of interest for the special purpose for which he is to be employed.

The first part of the *In re Roberts* test involves whether a professional has an economic interest that would tend to lessen the value of the estate. In this case, neither Gallo nor the Mercures "possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re Roberts*, 46 B.R. at 826-27. Indeed, Trustee's and Gallo's (on behalf of the Mercures) interests are aligned in the effort to (i) maximize the estate by minimizing GMAC's secured claim and (ii) collect accounts receivable that Trustee would be forced to otherwise abandon. Without the employment of Gallo as special counsel (on a contingency fee basis), Trustee will be forced to abandon potentially valuable assets because the estate does not have money to pay counsel to pursue such assets. Therefore, the

---

[4] The Court in *In re Arochem Corp.* goes on to state, "[I]f the bankruptcy judge were later to perceive a materially adverse interest, 'he has at his disposal an armamentarium of permissible remedies, including. . . [sic] disqualification [and] disallowance of all or some fees'." *In re Arochem Corp.*, 176 F.3d at 628 *quoting In re Martin*, 817 F.2d at 182-83 (alteration in original).

12

interests of Trustee and Gallo are aligned against GMAC in seeking to minimize GMAC's secured claim and in collecting assets for the benefit of all creditors of the estate.

GMAC erroneously argues that Trustee's and Gallo's interests are not aligned because if Trustee succeeds in reducing the amount of GMAC's secured claim, GMAC will have a smaller claim for which it will receive full payment and, thus, a greater unsecured claim. GMAC contends that a larger unsecured claim will increase the liability of the Mercures under the guarantee. GMAC's argument, however, misses the mark. If Trustee, through Gallo, is successful in reducing the amount of GMAC's secured claim, the benefit will inure to all creditors - including the Mercures – because there will be more money to distribute to unsecured creditors. GMAC and Gallo are not in agreement about whether the Mercures' guarantee encompasses all amounts owed to GMAC or just the secured amount. Resolution of that dispute is not necessary in order for this Court to decide the pending Motion to Employ. GMAC argues that the guarantee covers all amounts Debtor owes it and, thus, reducing GMAC's secured claim increases the Mercures' liability under the guarantee. Gallo, on behalf of the Mercures, argues that, to the extent the Odometer Roll-Back damages are excluded from GMAC's secured claim, they are also excluded from the guarantee. Gallo contends that for every dollar GMAC's secured claim is reduced, the Mercures will receive a dollar-for-dollar reduction on the amount of the guarantee. Even though reduction of GMAC's secured claim will

13

result in a concomitant increase in GMAC's unsecured claim, this result does not create an actual conflict of interest between the Mercures and Trustee. Gallo argues that any detriment to the Mercures as a result of reclassification of GMAC's claim from secured to general unsecured, which will reduce the payout to all general unsecured creditors, will be far outweighed by the decrease in the amount of the Mercures' guarantee. All other general unsecured creditors are also not adversely impacted because without Gallo's offer to represent Trustee, these assets would be abandoned and the unsecured creditors would receive nothing. Gallo asserts that there is no conflict of interest between Trustee and the Mercures. Since the Mercures – and by extension Gallo – believe that their interests are aligned with Trustee, this Court does not find that GMAC's litigation posture concerning the Mercures' liability creates an actual conflict of interest on the part of Gallo.

Additionally, the fact that Mercures have a claim against the estate is not at issue here because Trustee only seeks to retain Gallo for the special purposes in the Motion to Employ, which representation does not involve the Mercures' claim. Section 327(c) specifically provides that a professional is not disqualified from representing a trustee for a special purpose merely because such professional also represents a creditor of the estate.

GMAC also erroneously alleges that Gallo has an adverse interest because his firm represents Sky Bank, which is another

14

secured creditor. Because the Supplemental Memorandum does not address the Sky Bank issue, it appears that GMAC has abandoned this argument. Despite the appearance that this argument has been abandoned, the Court will, nevertheless, address it. Sky Bank is a secured creditor only with respect to the Real Property. Trustee seeks to employ Gallo only to determine the validity, priority and extent of GMAC's claims asserted against Debtor and to represent Trustee in the collection of those assets and causes of action, which were identified in the Notice of Abandonment. The Notice of Abandonment does not include the Real Property. Therefore, Gallo's proposed representation of Trustee does not include any matter involving the Real Property. Since Trustee is seeking to employ Gallo as special counsel, as opposed to general counsel, Gallo must hold an interest adverse to the estate or an actual conflict of interest regarding the purpose of his retention in order for the Court to disapprove such retention. *In re Peters Contracting, Inc.*, 301 B.R. at 860. Trustee is not seeking to employ Gallo for any purpose involving the Real Property. Because the Real Property is Sky Bank's only connection to this estate, it is clear that representation of Sky Bank by Gallo's firm is of no moment to this Motion to Employ.

The second part of the *In re Roberts* test requires the Court to consider whether a professional possesses a predisposition of bias against the estate. As set forth above, the interest of Gallo, on behalf of the Mercures, is aligned with the estate's interest.

15

Gallo and Trustee both want to limit the amount of GMAC's secured claim and collect assets for the estate. *See supra* pp. 12-15. As a consequence, Gallo does not "possess a predisposition under circumstances that render such a bias against the estate." *In re Roberts*, 46 B.R. at 826-27.

The Court does not need to conduct a separate test as to whether there is an actual conflict of interest, as set forth in section 327(c), because an actual conflict of interest is governed by the same test in *In re Roberts*, which is has been previously addressed *(supra* pp. 11-15).

Moreover, GMAC objects to Gallo receiving a 1/3 contingency fee. GMAC's objection to Trustee's Motion to Employ Gallo, which is on a contingency fee basis, is particularly troubling given GMAC's refusal to carve-out any money from its secured interest for Trustee's attorneys fees. Here, GMAC is demonstrably adverse to the estate. If, as a result of lack of funds to pursue the Adversary Proceeding, Trustee is forced to abandon the assets, GMAC will receive a potential windfall. By refusing to fund Trustee, GMAC attempts to ensure that there will not be an adjudication by this Court of the amount of its secured claim and GMAC's rights to the amounts due to Debtor pursuant to the Sale Agreement. GMAC's objection to Trustee's request to employ Gallo appears to be solely based on its self interest and not any true concern that Gallo has an actual conflict of interest. In support of its objection regarding the contingency fee, GMAC claims that because it, and not

16

Trustee, initiated the Adversary Proceeding, Gallo should not be entitled to any compensation from the Adversary Proceeding. GMAC's argument is illogical because it ignores the time-line in this case. Although GMAC commenced the Adversary Proceeding, it did so prior to conversion of the case and prior to Trustee being appointed. As a consequence, the fact that GMAC, rather than Trustee, initiated this lawsuit is immaterial. Since her appointment, Trustee has actively pursued the estate's interests in the Adversary Proceeding. It will only be if GMAC prevails in its objection to the Motion to Employ that Trustee will have to abandon the estate's claims. Gallo has previously clarified that any fees he seeks will be from recovery that is not encompassed by GMAC's security interest. Gallo's fees, like all other professional fees, will be subject to approval by this Court after proper application. As a consequence, to the extent GMAC's objection is really to the amount of compensation rather than to retention, the objection is premature.

GMAC also objects on the basis that the Court should impose a time certain (GMAC proposed two weeks) in which Trustee and Gallo must determine if Gallo is going to continue to represent the estate. The Court finds that there is no basis to this objection. Gallo will not be able to withdraw as counsel without authorization from this Court. The Court finds no basis to permit one party to litigation to dictate any term of the attorney-client relationship of its adverse opponent.

17

04-42726-kw   Doc 186   FILED 10/18/06   ENTERED 10/18/06 14:55:15   Page 17 of 20

## III. CONCLUSION

Based upon the foregoing, the interests of Trustee and Gallo, on behalf of the Mercures, are aligned. Although Gallo is not disinterested because of his representation of the Mercures as general unsecured creditors, pursuant to 11 U.S.C. § 327(c), such representation does not disqualify him from representing Trustee for a special purpose. Sections 327(a) and (c) do not prohibit Trustee from employing Gallo for a special purpose unless he holds an interest adverse to the estate or has an actual conflict of interest for which he is employed. Although GMAC argues that Gallo has an interest adverse to the estate and that he has an actual conflict of interest, GMAC's argument is based solely on Gallo's representation of the Mercures as creditors. As set forth above, a professional employed for a special purpose is not disqualified because of representation of a creditor unless there is an actual conflict of interest. This Court has concluded, after applying the test in *In re Roberts*, that Gallo does not hold an interest adverse to the estate and he does not have an actual conflict of interest. Indeed, it appears that not only is Gallo's interest not adverse, such interest (on behalf of the Mercures) is aligned with Trustee's interest. If, in the future, an adverse interest or actual conflict of interest arises (which is not currently anticipated), the Court may disqualify Gallo as counsel for the special purpose or deny some or all of his fees.

There is no conflict of interest as a result of the representation of Sky Bank by Gallo's firm. The contingency fee arrangement also does not provide a basis to deny the Trustee's Motion to Employ. Therefore, Trustee's Motion to Employ is granted and GMAC's Objection is overruled.

An appropriate order will follow.

*/s/ Kay Woods*
**HONORABLE KAY WOODS**
**UNITED STATES BANKRUPTCY JUDGE**

19

```
                    UNITED STATES BANKRUPTCY COURT
                      NORTHERN DISTRICT OF OHIO
                                   *
                                   *
IN RE:                             *   CASE NUMBER 04-42726
                                   *
MIDWAY MOTOR SALES, INC.,          *
                                   *
                                   *   HONORABLE KAY WOODS
                                   *
          Debtor.                  *
                                   *
                                   *
*****************************************************************
                              ORDER
*****************************************************************
```

For the reasons set forth in this Court's Memorandum Opinion entered this date, Michael Gallo, Esq. is not disqualified from representing Trustee as special counsel in this case. Trustee's Motion to Employ Attorney for Trustee for Special Purpose is granted.

**IT IS SO ORDERED.**

*Kay Woods*
HONORABLE KAY WOODS
UNITED STATES BANKRUPTCY JUDGE